IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

EQUAL EMPLOYMENT OPPORTUNITY       *
COMMISSION,
     Plaintiff,                    *
and
STEPHANIE WILLIS,                  *
     Plaintiff-Intervenor,             CASE NO. 3:09-CV-85-CDL
                                   *
vs.
                                   *
PIZZA & SUB EXPRESS, INC., and
WARREN HUDDLESTON,                 *

     Defendants.                   *

---

O R D E R

Plaintiff Equal Employment Opportunity Commission ("EEOC") and Plaintiff-Intervenor Stephanie Willis ("Willis") contend that Willis's former employer, Pizza & Sub Express, Inc. ("PSE") subjected Willis to a hostile work environment because of her sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, ("Title VII"). Defendants seek summary judgment as to the Title VII claims of EEOC and Willis (collectively, "Plaintiffs"), contending that PSE was not an "employer" within the meaning of Title VII during the relevant timeframe. For the reasons set forth below, the Court agrees, and Defendants' Motion for Summary Judgment (ECF No. 24) is granted as to Plaintiffs' Title VII claims, which are the only federal claims in this action. The Court declines to exercise supplemental jurisdiction over Willis's state law claims,

and those claims are therefore dismissed without prejudice.  *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction"). Defendants' Motion to Strike Exhibits E and F to Willis's Response to Defendants' Motion for Summary Judgment (ECF No. 53) is denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In determining whether a *genuine* issue of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## DEFENDANTS' MOTION TO STRIKE

As a preliminary matter, the Court must determine whether it may consider certain evidence proffered by Plaintiffs.  Defendants move

to strike Exhibits E and F to Willis's Response to Defendants' Motion for Summary Judgment (ECF No. 53). Exhibit E is PSE's 2007 quarterly wage reports to the Georgia Department of Labor; it is also Exhibit 5 to the deposition of Patricia Colquitt, an owner of PSE. Exhibit F is PSE's 2007 quarterly federal tax returns; it is also part of Exhibit 10 to Colquitt's deposition. Defendants argue that Plaintiffs have not properly authenticated the exhibits and that the Court may not consider them in analyzing Plaintiffs' summary judgment motion.

PSE produced Exhibits E and F to Plaintiffs during discovery, and Colquitt testified that they appeared to be documents prepared by PSE's bank on behalf of PSE based on information the bank received from PSE's managers. Colquitt Dep. 57:23-58:8, 98:25-100:15, 101:2-11, 103:6-16, 106:7-13, Feb. 24, 2010, ECF Nos. 32-2 & 32-3; Colquitt Dep. Ex. 5, Employee Quarterly Taxable Wage Reports, ECF No. 32-3; Colquitt Dep. Ex. 10 at PSE000142, PSE000146, PSE000151, PSE000154, Employer's Quarterly Federal Tax Returns, ECF No. 32-3. The Court finds that Colquitt adequately authenticated the exhibits when she testified that they appeared to be PSE's wage and tax records. *See* Fed. R. Evid. 901(b)(1) (stating that a witness may authenticate a document by testifying that it is "what it is claimed to be"). Furthermore, even if Colquitt did not have sufficient knowledge to authenticate the exhibits, the Court is satisfied that

Exhibits E and F—which are business records of PSE that were produced by PSE during discovery—could be reduced to admissible form at trial. *Cf. Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005) (noting that, on a motion for summary judgment, a court "may consider only that evidence which can be reduced to an admissible form"). Accordingly, Defendants' Motion to Strike (ECF No. 53) is denied.

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiffs, the record reveals the following.

## I. PSE's Restaurant

PSE operates a restaurant that serves pizza and other Italian foods. PSE was incorporated in November 2006, and the restaurant opened for business sometime in March 2007. Weaver Dep. 29:7-10, 30:7-12, Feb. 24, 2010, ECF Nos. 32-6 & 32-7 (stating that Weaver was hired in March 2007 and that she started work when PSE opened the restaurant, about a week after Weaver was hired). PSE operated the restaurant until May 18, 2007, when a Madison County superior court judge issued an interlocutory injunction prohibiting PSE from operating its restaurant until October 20, 2007; the restaurant violated a non-compete clause in a franchise agreement signed by one of PSE's owners. *See generally* Colquitt Dep., Feb. 24, 2010, Ex. 1 at PSE00724-PSE00729, Order Granting Interlocutory Inj., May 18,

2007, ECF No. 32-3.  After the injunction was lifted in October 2007, PSE began operating the restaurant again.

## II.  PSE's Employees

EEOC concedes that PSE did not have more than 15 employees during any week in 2006, EEOC's Resp. to Defs.' Mot. for Summ. J. 3-4, ECF No. 28, and Willis points to no evidence that PSE had any employees during 2006.  PSE concedes that it had fifteen or more employees during the three weeks preceding the injunction—the weeks beginning April 23, May 1, and May 7, 2007.  PSE also concedes that it had fifteen or more employees during the twelve weeks after the injunction was lifted, beginning the week of October 15, 2007.[1] Therefore, PSE concedes that it had fifteen or more employees during fifteen weeks of 2007.

The parties point the Court to the following evidence regarding the number of employees PSE had during 2007:

(1)  Affidavit of Linda Clay, a client relationship manager for PSE's bank.  Defs.' Mot. for Summ. J. Ex. B, Clay Aff., ECF No. 24-4 [hereinafter Clay Aff.].  According to Clay's review of PSE's payroll records, including the payroll register and employee spreadsheet discussed below, PSE employed fifteen or more

---

[1]These twelve weeks—which include one partial week—are the weeks beginning (1) October 15; (2) October 22; (3) October 29; (4) November 5; (5) November 12; (6) November 19; (7) November 26; (8) December 3; (9) December 10; (10) December 17; (11) December 24; and (12) December 31.

employees during fifteen weeks (including partial weeks) of 2007. *Id.* ¶¶ 2-3.

(2) PSE's payroll register, prepared by PSE's bank. Clay Aff. Ex. A, Payroll Register, Aug. 13, 2009, ECF No. 24-4 at 4-38 [hereinafter Payroll Register]; *see also* Clay Aff. ¶ 3. The payroll register contains a list of PSE's employees for each pay period, along with the hours worked and the amount of wages earned. The first payroll register is for the pay period beginning February 15, 2007.[2] Payroll Register, ECF No. 24-4 at 4. There is a payroll register report for each two-week period from February 15 to May 23; the payroll register reports resume again for the pay period beginning October 22. *Id.* at 4, 24, 25. The Payroll Register does not reflect more than thirteen employees for any pay period during 2007.

(3) PSE's spreadsheets of employees and dates worked, prepared by Defendants' counsel and an employee of PSE's bank. Colquitt Dep. Ex. 3, PSE Spreadsheet, ECF No. 32-3 at 51-53 [hereinafter PSE Spreadsheet A]; Clay Aff. Ex. B, PSE Spreadsheet, ECF No. 24-4 at 39-42 [hereinafter PSE Spreadsheet B].[3] PSE Spreadsheet

---

[2]From February to May 2007, PSE's pay periods were two weeks, starting on a Thursday and ending on a Wednesday. Payroll Register, Aug. 13, 2009, ECF No. 24-4 at 4-24. From October to December 2007, PSE's pay periods were two weeks, starting on a Monday and ending on a Sunday. *Id.* at 25-38.

[3]The two spreadsheets are similar, but the Court notes significant differences below.

A contains a list of PSE's employees and their employment dates.[4]  Both spreadsheets state which employees were on PSE's payroll during each week of 2007; if the "week" column is shaded for a particular employee, then PSE represents that the employee was on PSE's payroll during that week.[5]  According to both PSE Spreadsheets, PSE employed fifteen or more employees during the weeks beginning: (1) April 23; (2) April 30; (3) May 7; (4) October 15; (5) October 22; (6) October 29; (7) November 5; (8) November 12; (9) November 19; (10) November 26; (11) December 3; (12) December 12; (13) December 17; and (14) December 24. Neither PSE Spreadsheet contains a column for the week beginning

---

[4]The Court notes that some of the employment end dates listed on PSE Spreadsheet A are wrong.  For example, on the spreadsheet, Willis's end date is February 11, 2008.  PSE Spreadsheet A.  It is undisputed, however, that Willis was terminated during November 2007.  Thus, based on PSE Spreadsheet A, it appears that Willis remained in PSE's payroll records even after she was terminated.  Such an inconsistency, which *adds* employees to the employee count for purposes of summary judgment, is immaterial; only an inconsistency that *subtracts* employees from the employee count would be significant.  Plaintiffs point to no evidence that employees were *deleted* from PSE's payroll *before* their actual end date.  Although Plaintiffs do not appear to have pointed it out, the Court notes that PSE Spreadsheet A lists employee Amy Lord's end date as November 7, 2007, *id.*, although PSE's payroll register indicates that Lord worked during the pay periods beginning November 19 and December 3, Payroll Register, ECF No. 24-4 at 33 & 37.  This inconsistency is immaterial because: (1) Lord would be counted as an employee anyway based on the Payroll Register, and (2) PSE acknowledges that it had more than fifteen employees during this time frame.

[5]Based on the spreadsheets, ten employees worked for PSE before and after the injunction that was in place from May 18 to October 20; it appears that these ten employees remained on PSE's payroll during the time when PSE was not operating the restaurant. *E.g.*, PSE Spreadsheet A.

December 31, though it appears that, based on the employment end dates listed on PSE Spreadsheet A, PSE would represent that it employed the same number of employees (twenty-one) during the week of December 31 as it did during the week of December 24.[6] Also, according to the PSE Spreadsheets, PSE employed more than ten but fewer than fifteen employees during four weeks of 2007: April 2, April 9, April 16, and May 14. PSE Spreadsheet A (listing twelve employees during week of April 9 and 13 employees during week of April 16); PSE Spreadsheet B (listing twelve employees during weeks of "April 3" and April 9, thirteen employees during week of April 16, and fourteen employees during week of "May 15").[7]

(4)    PSE's Employee Quarterly Taxable Wage Report, which was prepared by BB&T for the Georgia Department of Labor. Colquitt Dep. Ex. 5, Employee Quarterly Taxable Wage Reports, ECF No. 32-3 [hereinafter DOL Wage Reports]. This document contains a list of the employees who worked for PSE at any time during a

---

[6]The Court recognizes that the statute requires that an employee be employed "for each working day in each of twenty or more calendar weeks." 42 U.S.C. § 2000e(b). For purposes of the present summary judgment motion, however, the Court will count partial weeks, as Defendants did in their papers before the Court.

[7]For some reason, several weeks reported on PSE Spreadsheet B list the Tuesday's date rather than the Monday's date as the start of the work week. For example, PSE Spreadsheet B contains columns for the weeks of "April 3" and "May 15." PSE Spreadsheet B.

particular quarter.  *Id.*  During Q1 of 2007, PSE reported a total of seven employees;[8] during Q2, PSE reported twenty-one employees;[9] and during Q4, PSE reported sixteen employees.[10]  *Id.* The DOL Wage Reports do not contain the employees' exact dates of employment.  *Id.*

(5)  PSE's Employer's Quarterly Federal Tax Returns.  Colquitt Dep. Ex. 10 at PSE000142, PSE000146, PSE000151, PSE000154, Employer's Quarterly Federal Tax Returns, ECF No. 32-3 [hereinafter Federal Tax Returns].  Among other things, the form asks PSE to state, for the quarter, the number of employees "who received wages, tips, or other compensation for the pay period including Mar. 12 (Quarter 1), June 12 (Quarter 2), Sept. 12 (Quarter 3), Dec. 12 (Quarter 4)."  *Id.*  PSE reported six employees for the pay period including March 12, 2007, *id.* at PSE00142, zero employees for the pay period including June 12, 2007, *id.* at PSE000146,

---

[8]These employees are Kimberly Bolton, Angela Colquitt, Jessica Lowe, Nikki Perry, Lance Philips, Karen Weaver, and Brittany Wood. DOL Wage Reports at PSE0064.

[9]These employees are M.A. Bedor, Krista Bernal, Brooke Bodiford, Kimberly Bolton, Tiffany Burruss, Marna Capps, James Cofer, Jennifer Collins, Angela Colquitt, Demetrius Cunningham, Janelle Dolan, Elizabeth Grizzle, Katherine Hutchins, Amy Lord, Lisa Lowe, Jessica Lowe, Adrienne Myers, Lance Philips, Ciara Shelnutt, Meggan Pierce, and Karen Weaver.  DOL Wage Reports at PSE0065-PSE0067.

[10]These employees are Nicole Barner, Krista Bernal, Amanda Crowe, Sylvene Gaines, Calan Hathaway, Felicia Huddleston, Keontay Jewell, Amy Lord, Adrienne Myers, Tina Rogers, Ciara Shelnutt, Meggan Pierce, Karen Weaver, Marie Weaver, David Willand, and Stephanie Willis. DOL Wage Reports at PSE0068-PSE0069.

zero employees for the pay period including September 12, 2007, *id.* at PSE000151, and ten employees for the pay period including December 12, 2007, *id.* at PSE000154.

(6) List of employees who worked at PSE between November 2007 and January 2008, prepared by Colquitt. Colquitt Dep. Ex. 6, Employee Lists, ECF NO. 32-3. On this list are supervisory employees Warren Huddleston, Tina Rogers, and Karen Weaver, as well as non-supervisory employees Krista Bernal, Greg Colquitt, Amanda Crowe, S.J. Gaines, Amy Lord, Meggan Pierce, Maria Weaver, David Willis,[11] and Stephanie Willis.

(7) Colquitt's deposition testimony that one of her relatives, Michael Colquitt, helped as a delivery person when the restaurant first opened. Colquitt Dep. 48:1-24.

(8) Colquitt's deposition testimony that someone named Debbie worked for PSE during 2007. Colquitt Dep. 92:16-93:14.[12]

(9) The deposition testimony of former PSE manager Warren Huddleston, stating that Greg Colquitt, a relative of PSE's

---

[11] It is not clear from the record whether there were two Davids—David Willis and David Willand—working at PSE during Q4 of 2007. The Payroll Registers, the DOL Wage Reports, and the PSE Spreadsheets only list David Willand, who started working at PSE at the end of October 2007. The documents do not contain any reference to a David Willis. *See generally* Payroll Register; PSE Spreadsheets A & B; DOL Wage Reports.

[12] Colquitt was asked if a Debbie Hitchcock worked for PSE. Colquitt testified that someone named Debbie worked for PSE but that Colquitt did not think her last name was Hitchcock. Colquitt Dep. 92:16-93:14.

owners, helped as a family member but was not on the payroll.

Huddleston Dep. 72:23-73:8, 74:3-6, Dec. 4, 2009, ECF No. 32-4.

### III. Willis's Employment With PSE and Plaintiffs' Claims

It is undisputed that Willis began working for PSE on or about October 30, 2007, and she was terminated on or about November 23, 2007. She contends that her supervisor, Defendant Huddleston, sexually harassed her throughout her employment.

EEOC brings a Title VII claim against PSE for sexual harassment. Compl. ¶¶ 7-9, ECF No. 1. Willis likewise brings a claim against PSE for sexual harassment. Intervenor Compl. ¶¶ 37-44, ECF No. 9. Willis also brings a retaliatory discharge claim against PSE, *id.* ¶¶ 45-51, as well as various state law claims against Defendants, *id.* ¶¶ 52-86.

### DISCUSSION

To establish their Title VII claims, Plaintiffs must prove that PSE was an "employer" within the meaning of Title VII. *E.g., Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359 (11th Cir. 1994). "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C. § 2000e(b). Willis worked for PSE during 2007, so Plaintiffs must establish that PSE had "fifteen or

more employees for each working day in each of twenty or more calendar weeks" during 2006 or 2007.  *Id.*

A.   Did PSE Have the Requisite Number of Employees?

EEOC concedes that PSE did not have the requisite number of employees during 2006 to be considered an "employer."  EEOC's Resp. to Defs.' Mot. for Summ. J. 3-4, ECF No. 28.  Willis has not pointed the Court to any evidence that PSE had any employees during 2006, so the Court concludes that PSE could not be considered a Title VII "employer" during 2006.

The next question is whether PSE had "fifteen or more employees for each working day in each of twenty or more calendar weeks" during 2007.  The Supreme Court adopted the "payroll method" for determining when an employer "has" an employee.  *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207 (1997).  Under that method, an employee "is counted as an employee for each working day after arrival and before departure."  *Id.* at 211.  Plaintiffs argue that the Court should not use the payroll method because PSE's records are too incomplete and inaccurate to be relied upon; Plaintiffs appear to suggest that because there are several internal inconsistencies in the payroll documents, the Court should simply assume that the records create a genuine issue of material fact as to whether PSE is an "employer" for Title VII purposes.  The Court declines this invitation and finds that the payroll method can be applied here.  As discussed in more

12

detail below, the Court will assume, for purposes of summary judgment, that PSE employed a certain individual for each day in a specific week if *any* evidence supports a finding that the individual was employed at any time during the week. For example, if PSE stated in either PSE Spreadsheet that a certain individual was employed during a given week, then a genuine issue of material fact exists as to whether the individual was employed for each day during that week, even if the employee is not listed in the Payroll Register for that week, the DOL Wage Reports for the quarter, or the other PSE Spreadsheet.

There are internal inconsistencies between the various payroll documents, but these inconsistencies do not mandate that the Court disregard the payroll documents in their entirety. PSE admits that it had fifteen or more employees during the week beginning October 15 and each week thereafter in 2007. PSE Spreadsheets A & B. Therefore, any post-October 15 inconsistencies between the PSE Spreadsheets, PSE's Payroll Register, the Federal Tax Returns, the Wage Reports, and the employee list provided by Colquitt are immaterial.[13] Any inconsistencies in the various payroll documents

---

[13]One post-October 15 inconsistency is that Warren Huddleston, a manager, is not listed on PSE's Q4 Wage Report or Payroll Register. PSE does, however, admit that Huddleston was a PSE employee who started on October 25, 2007, and he is therefore included in the employee count for the week beginning October 22 and thereafter. PSE Spreadsheets A & B. Plaintiffs point to no evidence that Warren Huddleston started working at PSE prior to October 25, 2007.

for the weeks beginning April 23, April 30, and May 7 are likewise immaterial because PSE admits that it had more than fifteen employees during each of those three weeks. The Court therefore turns to the question whether the various payroll records and other evidence create a genuine issue of material fact as to whether PSE employed more than fifteen employees during any other week in 2007.

There is a genuine issue of material fact as to whether PSE employed Michael Colquitt, Greg Colquitt, and someone named Debbie

---

Another post-October 15 inconsistency involves one employee or two employees named David. Colquitt listed David "Willis" on a "list of trainees from November 2007, to January 2008." Colquitt Dep. Ex. 6, Employee Lists. David "Willis" is not listed on any other PSE payroll documents, though a David "Willand" is. *E.g.*, PSE Spreadsheet A. The evidence suggests that David "Willand" started working for PSE on October 28, 2007. *Id.* Plaintiffs have not pointed to any evidence that either David "Willis" or David "Willand" worked for PSE before October 15, 2007, so the Court need not resolve whether PSE employed one David W. or two; even if there were two separate employees named David W., they were both only employed during the time when PSE already admits that it employed more than fifteen employees.

In addition, Plaintiffs point out that PSE reported "ten employees who received wages, tips, or other compensation for the pay period including" December 12. This number squares with the number of checks PSE issued (ten) for the pay period starting December 3, though it does not square with the number of employees PSE admitted it had during the week of December 10 (twenty-one). *Compare* Payroll Register at 36-38 (stating that ten checks were issued), *with* PSE Spreadsheet A (stating that PSE had twenty-one employees as of December 10). Again, any inconsistencies between the Federal Tax Return and the PSE Spreadsheets are immaterial because PSE admits that it had fifteen or more employees as of October 15, 2007.

Finally, Plaintiffs point out that, according to PSE Spreadsheet A, a number of employees—including Willis—were terminated on February 11, 2008 and that this is after the actual end date. PSE Spreadsheet A. Thus, certain employees appear to have remained on PSE's payroll *after* their actual end date. As discussed *supra* note 4, Plaintiffs point to no evidence that employees were *deleted* from PSE's payroll *before* their actual end date.

during 2007.  *See* Colquitt Dep. 48:1-24 (discussing Michael Colquitt); Huddleston Dep. 72:23-73:8, 74:3-6 (discussing Greg Colquitt); Colquitt Dep. Ex. 6, Employee Lists (listing Greg Colquitt); Colquitt Dep. 92:16-93:14 (discussing employee named Debbie).  These three individuals were not listed on any Payroll Register or DOL Wage Report, and they were not included in the head count proffered by PSE in either PSE Spreadsheet.  It is not clear from the record when these three individuals were employed by PSE; for the sake of argument, the Court will assume that these three employees worked for PSE throughout 2007.  For these reasons, the Court will, in calculating the number of employees PSE had during a particular week of 2007, add Michael Colquitt, Greg Colquitt, and Debbie.  The evidence does not, however, support the addition of any other employees because Plaintiffs pointed the Court to no evidence suggesting that PSE had additional employees that were not reported in the DOL Wage Reports, Payroll Register, or the PSE Spreadsheets. It would be sheer speculation for the Court to conclude that PSE employed additional employees but kept them off the books.

The next question is whether the addition of three employees makes a difference in the employer numerosity analysis.  The Court finds that the addition of three employees does make a difference as to the weeks beginning April 2, April 9, April 16, and May 14.  PSE

admits that it had twelve employees during the week of "April 3."[14] PSE Spreadsheet B. PSE admits that it had twelve employees during the week of April 9 and thirteen employees during the week of April 16. PSE Spreadsheets A & B. Finally, PSE admits that it had fourteen employees during the week of "May 15."[15] PSE Spreadsheet B. With the addition of three employees, the numbers come to fifteen employees during the weeks of April 2 and April 9, sixteen employees during the week of April 16, and seventeen employees during the week of May 14. Thus, there is a genuine issue of material fact as to whether PSE had fifteen or more employees during nineteen weeks of 2007. Plaintiffs have not, however, pointed to sufficient evidence

---

[14]PSE admits that it employed Brooke Bodiford, Marna Capps, James Cofer, Janelle Dolan, Elizabeth Grizzle, Jessica Lowe, Lisa Lowe, Adrienne Myers, Lance Philips, and Karen Weaver during the week of April 2. PSE Spreadsheet A. PSE also admits that it employed Kimberly Bolton and Angela Colquitt during the week of "April 3." PSE Spreadsheet B. The Payroll Register and DOL Wage Reports do not list any employees that are not listed in the PSE Spreadsheets. Plaintiffs point out, however, that Angela Colquitt is listed on the Q2 DOL Wage Report even though PSE Spreadsheet A states that her last day was March 29, 2007. *Compare* PSE Spreadsheet A *with* DOL Wage Reports at PSE0065. The Court notes that the check date for the final pay period of Q1 2007 was April 6, 2007; this may explain the inconsistency. Payroll Register, ECF No. 24-4 at 9. Moreover, Angela Colquitt *is* listed as an employee for the week of "April 3" on PSE Spreadsheet B, so the Court has included her in its count for the week of April 2.

[15]PSE admits that it employed Kristen Bernal, Marna Capps, Jennifer Collins, Demetrius Cunningham, Janelle Dolan, Amy Lord, Jessica Lowe, Ciara Shelnutt, Meggan Pierce, and Karen Weaver during the week of May 14. PSE Spreadsheet A. PSE also admits that it employed M.A. Bedor, Tiffany Burrus, Elizabeth Grizzle, and Katherine Hutchins during the week of "May 15." PSE Spreadsheet B. The Payroll Register and DOL Wage Reports do not list any employees that are not listed in the PSE Spreadsheets.

to create a genuine issue of material fact as to the remaining weeks of 2007.

Plaintiffs point to no evidence that PSE employed more than six employees (counting Michael Colquitt, Greg Colquitt, and Debbie) during the weeks beginning January 1, January 8, January 15, and January 22. There is no payroll register for this time period, and the only evidence regarding PSE's employees during the time period is the PSE Spreadsheets, which list Angela Colquitt, BJ Reddoch,[16] and Karen Weaver as employees. PSE Spreadsheets A & B. Plaintiffs also point to no evidence that PSE employed more than nine employees (counting Michael Colquitt, Greg Colquitt, and Debbie) during the week beginning January 29.[17] Plaintiffs further point to no evidence that PSE employed more than ten employees (counting Michael Colquitt, Greg Colquitt, and Debbie) during the weeks beginning February 5, February 12, February 19, and February 26.[18] Plaintiffs point to no

---

[16]Plaintiffs emphasize that Reddoch is not listed on the Payroll register or DOL Wage Reports. Although this inconsistency does exist in the records, it is clear that PSE admits that Reddoch was a PSE employee from sometime in January 2007 until March 5, 2007. PSE Spreadsheet A. Plaintiffs point to no evidence that Reddoch was employed after March 5.

[17]PSE admits that it employed Angela Colquitt, Jessica Lowe, Nicki Perry, BJ Reddoch, Karen Weaver, and Brittany Wood during the week of January 26, 2007. PSE Spreadsheets A & B. The Payroll Register and DOL Wage Reports do not list any employees that are not listed in the PSE Spreadsheets.

[18]PSE admits that it employed Angela Colquitt, Jessica Lowe, Nicki Perry, Lance Philips, BJ Reddoch, Karen Weaver, and Brittany Wood during February 2007. PSE Spreadsheets A & B. The Payroll Registers and DOL Wage

evidence that PSE employed more than eleven employees (counting Michael Colquitt, Greg Colquitt, and Debbie) during the weeks beginning March 5, March 12, and March 19.[19]  Plaintiffs also point to no evidence that PSE had more than fourteen employees (counting Michael Colquitt, Greg Colquitt, and Debbie) during the week beginning March 26.[20]  Finally, Plaintiffs point to no evidence that PSE employed more than thirteen employees (counting Michael Colquitt, Greg Colquitt, and Debbie) between May 21 and October 14.  PSE admits that it employed ten employees during each of these weeks, and

---

Reports do not list any employees that are not listed in the PSE Spreadsheets.

[19]PSE admits that it employed Kimberly Bolton, Angela Colquitt, Jessica Lowe, Nicki Perry, Lance Philips, BJ Reddoch, Karen Weaver, Brittany Wood during the week of March 5; Kimberly Bolton, Angela Colquitt, Lisa Lowe, Jessica Lowe, Nicki Perry, Lance Philips, Karen Weaver, and Brittany Wood during the week of March 12; and Kimberly Bolton, Marna Capps, Angela Colquitt, Jessica Lowe, Lisa Lowe, Lance Philips, Karen Weaver, and Brittany Wood during the week of March 19.  PSE Spreadsheets A & B.  The Payroll Register and DOL Wage Report do not list any employees that are not listed in the PSE Spreadsheets.
    Plaintiffs point out that PSE's quarterly federal tax return reported six employees during the pay period including March 12.  Federal Tax Return at PSE000142.  This squares with PSE's payroll register for the pay period including March 12, which reported that PSE issued six paychecks for that time period.  Payroll Register, ECF No. 24-4 at 8.  It is, however, inconsistent with the PSE Spreadsheet, which reports eight employees as of March 12.  The inconsistency is immaterial because the Court uses the larger number to determine how many employees PSE had on March 12; even the higher number (eight) plus three is only eleven.

[20]PSE admits that it employed Brooke Bodiford, Kimberly Bolton, Marna Capps, James Cofer, Angela Colquitt, Janelle Dolan, Jessica Lowe, Lisa Lowe, Adrienne Myers, Lance Philips, and Karen Weaver during the week of March 26.  PSE Spreadsheets A & B.  The Payroll Register and DOL Wage Report do not list any employees that are not listed in the PSE Spreadsheets.

Plaintiffs point to no evidence that PSE had additional employees during that time frame.[21]

For all of these reasons, the Court finds that Plaintiffs failed to show that genuine issues of material fact exist as to whether PSE had fifteen or more employees for each working day in each of twenty or more calendar weeks during 2007.

## B.    Plaintiffs' Additional Arguments

Willis argues that even if the Court concludes that PSE did not have fifteen or more employees for each working day in each of twenty or more calendar weeks during 2007, the Court should still find that PSE is an "employer" for Title VII purposes.

---

[21] PSE admits that it employed Kristen Bernal, Marna Capps, Jennifer Collins, Demetrius Cunningham, Janelle Dolan, Amy Lord, Jessica Lowe, Ciara Shelnutt, Meggan Pierce, and Karen Weaver between May 21 and October 14, although this is the time during which the restaurant was closed due to the injunction.  PSE Spreadsheets A & B.  The Payroll Register and DOL Wage Reports do not list any employees that are not listed in the PSE Spreadsheets.

Plaintiffs emphasize that PSE's quarterly federal tax return reported zero employees during the pay period including June 12, while PSE's Q2 wage report listed twenty-one employees during Q2 2007.  *Compare* Federal Tax Return at PSE000146 *with*, DOL Wage Reports at PSE0065-PSE0067.  This does not appear to be an inconsistency; the undisputed evidence suggests that the restaurant was closed in mid-May and that no payroll checks were issued in June.

Plaintiffs also point out that the PSE Spreadsheet reflects that PSE had employees on the payroll after the restaurant closed in May 2007 and before it reopened in October 2007.  The fact that PSE failed to *delete* employees from its payroll during a certain time frame does not show that PSE failed to *add* employees to its payroll during that or a different time frame.

19

## 1. Equitable Estoppel

Willis asks the Court to apply the doctrine of equitable estoppel. She notes that the Sixth Circuit has held that equitable estoppel may apply in "appropriate cases" to "estop defendants from arguing that they fall below the statute's numerical threshold." *Thomas v. Miller*, 489 F.3d 293, 302 (6th Cir. 2007). Willis argues that "the fact that [PSE] was shut down by a court order should not serve as a basis for it to avoid responsibility under Title VII." Willis's Resp. to Defs.' Mot. for Summ. J. 13, ECF No. 29-2. Willis speculates that "[b]ut for the Injunction, [PSE] would have continuously employed the approximately 18-25 individuals it did before and after the Injunction was in effect." *Id.* She contends that PSE "should be equitably estopped from arguing that it did not meet the threshold due to the fact that business operations were suspended for a period of time due to its own misdeeds." *Id.* at 14. Willis also argues that equitable estoppel should apply because PSE did not submit accurate records to governmental authorities. *Id* at 15.

Willis misunderstands the doctrine of equitable estoppel. Under Eleventh Circuit precedent, the elements of equitable estoppel are:

> (1) the party to be estopped misrepresented material facts;
> (2) the party to be estopped was aware of the true facts;
> (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the

20

> party asserting the estoppel did not know, nor should it
> have known, the true facts; and (5) the party asserting the
> estoppel reasonably and detrimentally relied on the
> misrepresentation.

*Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1326 (11th Cir. 2008)

(internal quotation marks omitted).  Here, though Plaintiffs contend

that PSE misrepresented its employee count to governmental

authorities, Plaintiffs pointed to no evidence that Plaintiffs

reasonably and detrimentally relied on any misrepresentations PSE

made regarding how many employees PSE had.  Moreover, throughout this

litigation, PSE has maintained that it is not an "employer" within

the meaning of Title VII.[22]  Answer to Compl. 1, 6 ¶ 1, ECF No. 6;

Answer to Intervenor Compl. 2, 6 ¶¶ 2-3, ECF No. 13; *see generally*

Mem. in Supp. of Defs.' Mot. for Limited Disc. and Limited Stay, ECF

No. 12 (arguing that PSE only had fifteen or more employees during

fifteen weeks of 2007).  For these reasons, the Court rejects

Willis's equitable estoppel argument.

  *2.  Waiver*

  Willis also contends that PSE waived its argument that it is not

an "employer" by "manifest[ing] an intent to be bound by Title VII"

because the restaurant had an "Equal Employment Is the Law" poster on

---

  [22] In contrast, in *Thomas v. Ala. Home Constr.*, 271 F. App'x 865, 867
(11th Cir. 2008) (per curiam), the Eleventh Circuit concluded that a
defendant *waived* its employee-numerosity defense because the defendant did
not raise the issue in its answer or any time before the close of the trial
on the merits.

its bulletin board. Willis's Resp. to Defs.' Mot. for Summ. J. 16. Willis cites no case law—and the Court can find none—holding that the mere posting of an EEOC poster amounts to a waiver of the employee-numerosity defense. The Court rejects Willis's waiver argument.

### 3. The "Coverage Based on Equity" Argument

Finally, Willis contends that she worked in a Title VII environment because PSE had more than fifteen employees during the time when she worked there and that PSE "could still be considered an employer covered by Title VII" even if PSE persuaded the Court that it did not have the requisite number of employees during twenty weeks of 2007. Willis's Resp. to Defs.' Mot. for Summ. J. 16-17. The statute, however, is clear. To establish that a business is an "employer" for purposes of Title VII, a plaintiff must prove that the business had "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C. § 2000e(b). Willis has not done so here, and the Court rejects her "coverage based on equity" argument.

### CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 24) is granted as to Plaintiffs' Title VII claims, which are the only federal claims in this action. The Court declines to exercise supplemental jurisdiction over Willis's state law claims, and those claims are dismissed without prejudice. Defendants' Motion

to Strike Exhibits E and F to Willis's Response to Defendants' Motion for Summary Judgment (ECF No. 53) is denied.

IT IS SO ORDERED, this 13th day of September, 2010.

S/Clay D. Land
         CLAY D. LAND
UNITED STATES DISTRICT JUDGE